1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    JOSEPH LACHAPELLE, et al.,              Case No. 15-cv-02195-JSC

          Plaintiffs,

8

9         v.                                 **ORDER RE: MOTION TO DISMISS**

10   DONG KWAN KIM, et al.,                  Re: Dkt. No. 43

          Defendants.

11

12

13       Plaintiffs Joseph LaChapelle and James Field ("Plaintiffs") bring this action against

14   Defendants Dong Kwan Kim ("Kim"), Young Song ("Song"), ZeroDesktop, Inc.

15   ("ZeroDesktop"), and Daehong Technew Corp. ("DTC") (collectively, "Defendants") to recover

16   allegedly fraudulent transfers and for damages.[1]  The First Amended Complaint ("FAC") alleges

17   that Defendants engaged in a scheme to transfer assets from nComputing to ZeroDesktop to

18   prevent Plaintiffs from satisfying outstanding judgments against Kim and nComputing.

19   Defendants Song, ZeroDesktop, Kim, and DTC now move to dismiss the FAC pursuant to Federal

20   Rule of Civil Procedure 12(b) subdivisions (1) and (6) and to strike the second cause of action

21   pursuant to Rule 12(f).  (Dkt. No. 43.)[2]  Having considered the parties' submissions, and having

22   had the benefit of oral argument on November 19, 2015, the Court GRANTS the motion in part.

23   The Court finds that Plaintiffs have standing; however, they have once again failed to allege

24   sufficient facts to state any plausible claims.

25   ───────────────────────

26   [1] The FAC also names Klaus Maier ("Maier") and nComputing, Inc. ("nComputing") as
     Defendants.  (Dkt. No. 40 ¶¶ 3-4.)  The Court has severed the claims against Maier and
27   nComputing.  (Dkt. No. 35; Dkt. No. 38 at 14.)

28   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

**BACKGROUND**

The following facts are based on the FAC allegations and documents of which the Court takes judicial notice.[3]  Following a jury trial in Oregon state court, Plaintiffs, pursuing shareholder derivative claims on behalf of Deep Photonics, Inc., obtained a judgment against Kim, among others, in the amount of $10 million ("the Judgment").  (Dkt. No. 40 ¶ 7; Dkt. No. 18-1 at 2-6.)  As of the filing of the FAC, only $300,000.00 of the Judgment has been paid.  (Dkt. No. 40 ¶ 7.)

Kim is an individual who owns and controls DTC.  (*Id.* ¶¶ 2, 6, 8.)  Kim and/or DTC, in turn, along with Song, own and control nComputing, a Delaware corporation.  (*Id.* ¶¶ 4, 8.)  Song and Maier are officers or employees of nComputing.  (*Id.* ¶ 4.)  Kim and Song, who are longtime business associates, also own and control ZeroDesktop.  (*Id.* ¶ 8.)  In response to interrogatories that Plaintiffs propounded against Kim in post-judgment debt collection proceedings in the original Oregon case, Kim disclosed that he owned shares of stock in both nComputing and ZeroDesktop.

At the end of 2014 and in early 2015, Song, Kim, DTC, and Maier hatched a scheme to move substantially all of nComputing's assets from nComputing to ZeroDesktop via a two-part transfer: first, an assignment for the benefit of creditors; second, immediate transfer of the same property to ZeroDesktop.  (*Id.* ¶ 11.)  On January 22, 2015, Plaintiffs sent a letter to nComputing (addressed to Song as Chief Executive Officer) warning nComputing not to transfer or otherwise dispose of Kim's shares in nComputing and advised that Plaintiffs would be "filing papers in Delaware" to levy on Kim's shares.  (*Id.*; Dkt. No. 42-2 at 4.)  Despite Plaintiffs' written warning, less than a week later, on January 26, 2015, nComputing—at the direction of Kim, Song, Maier, and DTC—made an assignment for the benefit of creditors to an assignee.  (*Id.* ¶¶ 8, 11; *see also* Dkt. No. 17-1 at 26.)  At some point thereafter, the assignee transferred virtually all assets of

---

[3] In their motion, Defendants incorporated the request for judicial notice submitted in connection with their motion to dismiss the initial complaint.  (Dkt. No. 43 at 13 n.1.)  For the same reasons discussed in the Court's Order dismissing the initial complaint, the Court will consider the extra-pleading materials for the purposes of the 12(b)(6) motion.  *See LaChapelle*, 2015 WL 5461542, at *3-4.  The Court can always consider extra-pleading materials for the purposes of resolving a 12(b)(1) dispute, as the Court will here.  *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

United States District Court
Northern District of California

1 nComputing to ZeroDesktop.  (Dkt. No. 40 ¶¶ 8, 11.)  The transfers rendered nComputing

2 insolvent, were purposefully concealed, and were made for no consideration.  (*Id.* ¶ 11.)  The

3 transferred assets were valued at "millions of dollars" and consisted of intellectual and other

4 property.  (*Id.*)  The intent of the transfer was "to hinder, delay, or defraud creditors" such as

5 Plaintiffs.  (*Id.*)

6          A few days after nComputing initiated the assignment, Plaintiffs served it with a citation to

7 attach Kim's shares in the company.  (*Id.* ¶ 8; Dkt. No. 18-8 at 14-15.)  After nComputing failed to

8 respond to the citation, judgment was entered against nComputing in favor of Plaintiffs in the

9 amount of $10 million (the "Delaware Judgment").  (Dkt. No. 40 ¶ 8; Dkt. No. 18-8 at 18.)  On

10 February 26, 2015, Plaintiffs filed an action against Kim (and the two other defendants in the

11 initial Oregon case) in San Mateo County Superior Court to collect on the Judgment.  (Dkt. No.

12 18-1 at 38.)  In that case, Plaintiffs sought an order charging Kim's interest in ZeroDesktop, but

13 the motion was denied on procedural grounds.  (Dkt. Nos. 18-3, 18-7, 18-8.)

14          On May 15, 2015, Plaintiffs filed this action alleging that Defendants are liable for

15 fraudulent transfers and conspiracy to defraud in connection with nComputing's transfer—via the

16 assignee of the assignment for the benefit of creditors—of its assets to ZeroDesktop.  The Court

17 dismissed the initial complaint for failure to adequately plead fraudulent transfer and conspiracy.

18 (Dkt. No. 38.)  Plaintiffs have since filed the FAC with three causes of action: intentional

19 fraudulent transfer against ZeroDesktop, constructive fraudulent transfer against ZeroDesktop, and

20 conspiracy to defraud against all Defendants.  Defendants have moved to dismiss on the grounds

21 that Plaintiffs lack standing, their claims are not ripe, and they have failed to cure the defects

22 identified in the Court's Order dismissing the initial complaint.  They also contend that the second

23 cause of action for constructive fraudulent conveyance should be stricken as Plaintiffs did not

24 obtain leave to add such a claim.

25                                    **DISCUSSION**

26 **I.       Subject Matter Jurisdiction**

27          A.      *Legal Standard*

28          Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction

United States District Court
Northern District of California

United States District Court
Northern District of California

over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists."  *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) (internal quotation marks and citation omitted).

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision."  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004).

In addition, a court's subject matter jurisdiction is limited to cases and controversies that are "ripe" for adjudication, and if a case is not ripe, the court should dismiss it.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  "The central concern [of a ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Richardson v. City & Cnty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1977) (internal quotation marks and citation omitted).

In ruling on a motion to dismiss for lack of subject matter jurisdiction—including lack of standing or ripeness—the court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party.  *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).  In addition, on a 12(b)(1) motion the Court may consider evidence outside the pleadings, including affidavits submitted by the parties.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

B.    *Analysis*

Defendants contend that the Court must dismiss the FAC for lack standing because Plaintiffs have not and cannot allege an injury-in-fact, and because the case is not ripe for adjudication as the assignment for the benefit of creditors is still under way.  Neither argument is persuasive.

4

1    With respect to injury, Defendants first argue that the transfer of assets away from

2    nComputing would not affect Plaintiffs' ability to collect the judgment against Kim so there has

3    been no injury.  Not so.  Defendants ignore that Plaintiffs have also secured the Delaware

4    Judgment directly against nComputing.  They allege that they have been injured by the fraudulent

5    conveyance of all assets from nComputing to ZeroDesktop because, as direct creditors of

6    nComputing due to the Delaware Judgment, the transfer means that they can no longer recover the

7    judgment owed from nComputing.  That is enough to establish an injury-in-fact for the purposes

8    of subject matter jurisdiction.

9    Ultimately, Defendants' argument is that Plaintiffs will be unable to *prove* that they

10    suffered injury.  Citing *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 81 (2001), they contend that

11    Plaintiffs have not proven that nComputing had sufficient assets prior to the transfer to satisfy any

12    of the Delaware Judgment given that other creditors might have priority.  But *Mehrtash* is not a

13    standing case; it involves a California court of appeals affirming a trial court's judgment in favor

14    of defendants after a bench trial.  *Id.* at 77.  The court agreed that the plaintiff had failed to

15    establish that the transfer at issue had prejudiced or injured her because the evidence showed that

16    she could not have recovered her debt if the allegedly fraudulent conveyance were set aside

17    because the property was so heavily encumbered with higher priority liens and because the

18    property could not be sold without a third party's consent.  *Id.* at 81.  Moreover, the *Mehrtash*

19    court held that the failure to establish an injury was a "failure by plaintiff to prove an essential

20    element of her case (that the allegedly fraudulent conveyance injured her)[.]"  *Id*; *see also A/S*

21    *Kreditt-Finans v. Cia Venetico De Navegacion S.A. of Panama*, 560 F. Supp. 705, 711 (E.D. Pa.

22    1983), *aff'd*, 729 F.2d 1446 (3d Cir. 1984) (applying New York and Pennsylvania law, granting

23    summary judgment to defendant on fraudulent conveyance claim where the plaintiff-creditor

24    failed to establish that he could have recovered its debt if the transaction were set aside because

25    debt to the secured creditors exceeded the fair market value of the property).  Even if it was a

26    question of injury-in-fact, Defendants have not offered any evidence that nComputing was so in

27    debt before the transfer that it could not have satisfied any of the Delaware Judgment.

28    Defendants also urge that Plaintiffs' claims are not ripe for adjudication because the

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1  assignment for the benefit of creditors is not yet complete. (*See* Dkt. No. 43 at 23.) The FAC

2  alleges that the assignment for the benefit of creditors already occurred, and that the assignee then

3  transferred nComputing's assigned assets to ZeroDesktop. (Dkt. No. 40 ¶¶ 8, 11, 19.) The Notice

4  of Assignment for the Benefit of Creditors itself indicates that the assignment occurred on January

5  26, 2015. (Dkt. No. 17-1 at 26.) While the document suggests that distribution of the liquidation

6  proceeds of nComputing's assets (as assigned to the assignee) was at that time not yet complete,

7  there is nothing before the Court that establishes that the assets are still freely attainable from

8  nComputing. (*See id.*) Thus, construing the allegations in the FAC as true as required, *see Levine*,

9  587 F.3d at 991, Plaintiffs have met their burden of establishing standing and ripeness necessary

10  for subject matter jurisdiction.

11  **II.     Substance of the Claims**

12       A.     *Legal Standard*

13       A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege

14  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

15  *Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability

16  requirement" but mandates "more than a sheer possibility that a defendant has acted

17  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

18  omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

19  allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

20  non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

21  2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

22  sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare*

23  *Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see*

24  *also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a

25  claim on the basis of a dispositive issue of law").

26       Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under

27  which a party is only required to make "a short and plain statement of the claim showing that the

28  pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic

United States District Court
Northern District of California

1   recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678

2   (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences

3   are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

4   2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

5   or counterclaim may not simply recite the elements of a cause of action, but must contain

6   sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

7   defend itself effectively.").  The court must be able to "draw the reasonable inference that the

8   defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a

9   complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

10  reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

11          B.      *Analysis*

12                  1.      Intentional Fraudulent Transfer

13          Plaintiffs' first cause of action is for intentional fraudulent conveyance, also known as

14  fraudulent transfer.  A fraudulent conveyance is "a transfer by the debtor of the property to a third

15  person undertaken with the intent to prevent a creditor from reaching the interest to satisfy its

16  claim." *Yaesu Elecs. Corp. v. Tamara*, 28 Cal. App. 4th 8, 13 (1994).  Under California's

17  Uniform Fraudulent Transfer Act ("UFTA"):

18                  (a) A transfer made or obligation incurred by a debtor is fraudulent
                    as to a creditor, whether the creditor's claim arose before or after the
19                  transfer was made or the obligation was incurred, if the debtor made
                    the transfer or incurred the obligation as follows:
20
                    (1) With actual intent to hinder, delay, or defraud any creditor of the
21                  debtor.

22                  (2) Without receiving a reasonably equivalent value in exchange for
                    the transfer or obligation, and the debtor either:
23
                    (A) Was engaged or was about to engage in a business or a
24                  transaction for which the remaining assets of the debtor were
                    unreasonably small in relation to the business or transaction.
25
                    (B) Intended to incur, or believed or reasonably should have
26                  believed that he or she would incur, debts beyond his or her ability
                    to pay as they became due.
27

28  Cal. Civ. Code § 3439.04(a)(1).

To assist in determining whether a transfer was made with the "actual intent to hinder, delay, or defraud any creditor of the debtor" the UFTA identifies 11 badges of fraud:

(1) Whether the transfer or obligation was to an insider.

(2) Whether the debtor retained possession or control of the property transferred after the transfer.

(3) Whether the transfer or obligation was disclosed or concealed.

(4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(5) Whether the transfer was of substantially all the debtor's assets.

(6) Whether the debtor absconded.

(7) Whether the debtor removed or concealed assets.

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). The "factors are intended 'to provide guidance to the trial court, not compel a finding one way or another.'" *In re SCI Real Estate Invs., LLC*, No. Bankr. No. 2:11-bk-15975-PC, 2013 WL 1829648, at * 4 (Bankr. C.D. Cal. May 1, 2013) (quoting *Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 834 (2005)).

Rule 9(b)'s heightened pleading standard applies to actual fraudulent transfer claims. *See LaChapelle*, 2015 WL 5461542, at *4. Thus, Plaintiffs must plead with particularity the circumstances surrounding the actual fraudulent transfer. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard, allegations must include the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). "When alleging fraud, a party must plead with particularity the circumstances constituting fraud, while conditions

8

of the mind, such as knowledge and intent, may be alleged generally." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) (internal quotation marks and citation omitted) (emphasis omitted). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1085 (N.D. Cal. 2015) (quotation marks and citation omitted).

In the FAC, Plaintiffs bring the intentional fraudulent transfer claim only against ZeroDesktop. At oral argument Defendants agreed that ZeroDesktop, as the recipient of the allegedly fraudulent transfer, is an appropriate defendant. They contend, however, that Plaintiffs have still failed to allege sufficient facts to plausibly state a claim that nComputing fraudulently transferred its assets to ZeroDesktop. The Court agrees, in part.

Plaintiffs sufficiently allege that (1) nComputing engaged in a transfer—the assignment for the benefit of credits; (2) of substantially all of its assets—intellectual property and other assets worth millions of dollars; (3) for no consideration; and (4) and the transfer rendered nComputing insolvent. (Dkt. No. 40 ¶ 11.) The question is whether they have sufficiently alleged that nComputing engaged in the transfer with the actual intent to hinder or defraud Plaintiffs' collection of Kim's and nComputing's debt.

Plaintiffs have alleged some "badges of fraud." They allege that before the assignment Plaintiffs specifically advised nComputing of their intent to levy on Kim's shares and warned nComputing that Plaintiffs would view any asset transfer as fraudulent. (Dkt. No. 40 ¶ 8; Dkt. No. 42-2 at 4-5.) Defendants counter that this allegation cannot support an inference of fraud because nComputing must have been planning the assignment long before it actually took place, that is, before it received Plaintiffs' "warning." But the FAC does not allege that nComputing had been planning the assignment for weeks before it occurred; thus, the Court may not assume such fact.

The FAC also alleges that the assignment was for substantially all of nComputing's assets (Dkt. No. 40 ¶ 11), an allegation that is supported by nComputing's failure to answer the complaint in this action as well as the Delaware action. And Plaintiffs allege that the assignment

United States District Court
Northern District of California

1    was made for no consideration (*id.*), that is, drawing all inferences in Plaintiffs' favor, that

2    ZeroDesktop was not an nComputing debtor and did not pay nComputing any money.

3        Nonetheless, an important element of Plaintiffs' fraud theory is that the transfer from

4    nComputing to ZeroDesktop was an inside job, that is, that Kim was able to maintain control of

5    the assets transferred to ZeroDesktop.  After all, the whole point of the transaction, according to

6    Plaintiffs, was so that Plaintiffs could not levy on Kim's ownership interest in nComputing.  The

7    FAC, however, does not sufficiently allege facts to plausibly support that inference.  Instead,

8    Plaintiffs merely allege that Kim "owns and/or controls DTC" and in turn DTC "owned and/or

9    controlled nComputing along with Song." (*Id.* ¶ 8.)  How does Kim own or control DTC and how

10   does DTC own or control nComputing?  Further, to plausibly support an inference that

11   nComputing gave away its assets for free and rendered itself insolvent so as to hinder Plaintiffs'

12   collection of Kim's debt, Plaintiffs need to allege with more specificity the nature of Kim's

13   ownership in nComputing.  For example, if Kim's shares of nComputing were only worth $5.00,

14   Plaintiffs' allegations would not plausibly support an inference that nComputing transferred its

15   assets to hinder Plaintiffs from levying on Kim's shares.  Further, Plaintiffs also allege that Kim

16   owns shares in ZeroDesktop.  If so, why would defendants transfer assets *to* ZeroDesktop to avoid

17   Kim having to satisfy the Judgment?  Plaintiffs must allege more to satisfy Rule 9(b).

18   Accordingly, the first cause of action is dismissed.

19       Another issue requires comment.  Defendants contend that to survive dismissal Plaintiffs

20   must affirmatively allege that nComputing's transfer of assets placed out of Plaintiffs' reach assets

21   which otherwise would have been used to satisfy Plaintiffs' judgments.  But the case upon which

22   Defendants rely holds unsurprisingly that as a "principle of equity," a plaintiff will ultimately be

23   entitled to the remedy of setting aside a fraudulent transfer only if the plaintiff can prove that the

24   transfer put beyond his reach property that would be subject to the payment of the debt.  *Mehrtash*,

25   93 Cal. App. 4th at 80.  The case, which was decided on appeal after trial, does not hold that a

26   plaintiff cannot state a claim for a fraudulent transfer without affirmatively alleging that the

27   transferor did not have other debts with priority that exceeded the transferred amount.

28

United States District Court
Northern District of California

2.      Constructive Fraudulent Transfer

As a threshold matter, Defendants urge the Court to strike this cause of action pursuant to Federal Rule of Civil Procedure 12(f).  Rule 12(f) motions "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation[.]  If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (internal citations omitted).  "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party."  *Id.*  "Ultimately, whether the grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, No. 12-08846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

Defendants ask the Court to strike the second cause of action from the FAC on the grounds that Plaintiffs did not seek leave to include a new cause of action, and the Court's Order granting leave to amend did not specifically grant leave to include one, either.  (*See* Dkt. No. 43 at 26.)  In that Order, the Court noted that Plaintiffs' initial complaint did not list a particular statute section of the UFTA—instead alleging "fraudulent transfer" generally without specifying a type—but construed Plaintiffs' claims as alleging actual—not constructive—fraudulent conveyance in light of the allegations that the transfer occurred with intent to hinder delay, or defraud creditors.  *See LaChapelle*, 2015 WL 5461542, at *3 n.2.  The Court concluded that Plaintiffs had failed to adequately allege fraudulent transfer and granted leave to amend.  *Id.* at *8.  Now, in the FAC, Plaintiffs have pleaded in the alternative both actual fraudulent transfer and constructive fraudulent transfer.  As a party is permitted to plead in the alternative claims for actual and constructive fraudulent transfer, *see, e.g.*, *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318, 338-40 (Bankr. N.D. Cal. 2009), the Court declines Defendants' invitation to strike the constructive fraudulent transfer claim.

Unlike actual fraudulent transfer, Rule 9(b)'s particularity requirement does not apply to constructive fraudulent transfer claims.  *See In re SCI Real Estate Invs., LLC*, 2013 WL 1829648,

at *6 ("Courts do not generally apply the heightened pleading standards of Rule 9(b) to constructive fraud claims.") (citations omitted); *Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780 MHP, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008) ("Its label notwithstanding, an alleged violation of section 3439.05 does not 'sound in fraud,' because the claim focuses entirely on the transaction at issue and does not include elements of knowledge, intent, or purpose.  Therefore, plaintiff is not required to plead constructive fraudulent conveyance with Rule 9(b) particularity.").

Constructive fraud may be found as to any present or future creditor when a debtor does not receive a reasonably equivalent value in exchange for a transfer, and the debtor either

> (A) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, [or]
>
> (B) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pass as they became due.

Cal. Civ. Code § 3439.04(a)(2).  Constructive fraud under California Civil Code Section 3439.05 applies "to an existing creditor if the debtor does not receive reasonably equivalent value and was insolvent at the time or . . . became insolvent as a result of the transfer."  *Mejia v. Reed*, 31 Cal. 4th 657, 670 (2003) (internal quotation mark and citation omitted).  Either way, at its core, "a constructive fraudulent transfer [claim] has two elements: reasonable equivalent value and insolvency."  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F. Supp. 2d 1216, 1224 (C.D. Cal. 2012).

The FAC's constructive fraudulent transfer cause of action merely recites the elements of the claim.  Plaintiffs allege that nComputing made the assignment for the benefit of creditors without "receiving reasonably equivalent value" (Dkt. No. 40 ¶ 15), but do not allege any facts to support this conclusion.  *See Allstate Ins. Co.*, 842 F. Supp. 2d at 1224 (holding that merely alleging that a transfer was made without "fair consideration" is a legal conclusion and not sufficient to plausibly state a claim).  Plaintiffs do allege in connection with the claim for actual fraudulent transfer that the assignment was made for "no consideration." (Dkt. No. 40 ¶ 11). Drawing all inferences in Plaintiffs' favor, the Court will assume that Plaintiffs are again alleging

1   that the transfer of assets to ZeroDesktop was for no consideration to nComputing.

2     The FAC also simply recites that at the time of the assignment nComputing "was engaged

3   or about to be engaged in a business or transaction for which the remaining assets, if any, of

4   nComputing were unreasonably small in relation to its business." (*Id.* ¶ 15.)  What business or

5   transaction?  How small and in relation to what?  No facts whatsoever are pled here.  The same is

6   true for Plaintiffs' allegation that nComputing and its principals "believed or reasonably should

7   have believed, that nComputing would incur debts beyond its ability to pay as they became due."

8   (*Id.* ¶ 16.)  What facts support that element of the claim?  Plaintiffs cannot state a claim for

9   constructive fraudulent transfer without making some factual allegations that plausibly point to

10  liability.  *See In re SCI Real Estate Invs., LLC*, 2013 WL 1829648, at *6-7.  Accordingly,

11  Plaintiffs fail to state a claim for constructive fraudulent transfer.

12        3.  Conspiracy to Defraud

13    Finally, in the third cause of action Plaintiffs allege that Defendants Kim, Song, Maier, and

14  DTC are liable for conspiracy to defraud in connection with their scheme to effectuate the alleged

15  fraudulent transfers.  "Conspiracy is not a cause of action, but a legal doctrine that imposes

16  liability on persons who, although not actually committing a tort themselves, share with the

17  immediate tortfeasors a common plan or design in its perpetration. . . . In this way, a coconspirator

18  incurs tort liability co-equal with the immediate tortfeasors." *Applied Equip. Corp. v. Litton Saudi*

19  *Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) (citations omitted).  Thus, to make a civil conspiracy

20  claim, the complaint must allege (1) the formation and operation of a conspiracy; (2) the wrongful

21  act or acts done pursuant thereto (the tort); and (3) the damage resulting from such act or acts.

22  *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 511 n.9 (1980) (citations omitted); *see also Wasco*

23  *Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted).

24  Conspiracy to defraud must be pleaded with particularity under Rule 9(b).  *See Vess*, 317 F.3d at

25  1105.

26    As for DTC, there is not even a conclusory allegation that DTC was part of a conspiracy to

27  defraud Plaintiffs.  (Dkt. No. 40 ¶ 19.)  Thus, Plaintiffs fail to state a claim of conspiracy against

28  DTC.

United States District Court
Northern District of California

1    For different reasons, the same is true for Kim, Song, and Maier.  The FAC does allege

2    generally that Kim, Song, and Maier participated in the agreement to engage in fraud.  (*Id.*)  But it

3    alleges nothing more.  Plaintiffs' insistence that their allegation that these defendants "hatched"

4    the "scheme" to transfer assets is enough to establish conspiracy is wrong, especially under

5    Federal Rule of Civil Procedure 9(b).  What did each of these defendants do? What were they

6    aware of at the time they took whatever actions they took?  Integral to the answers to these

7    questions is what role of each of these defendants played in nComputing and ZeroDesktop.  It is

8    not sufficient to merely allege they "controlled" these companies without some factual allegations

9    that make the "control" conclusion plausible.

10    Nor have Plaintiffs adequately alleged the second element: an underlying "wrongful act,"

11    which requires a plaintiff to adequately plead a cause of action for a separate tort or other wrong.

12    *See Applied Equip. Corp.*, 7 Cal. 4th at 511.  As described above, because Plaintiffs "do not

13    adequately allege fraudulent transfer[,] . . . [t]hus predicate 'wrong' for a conspiracy claim is

14    absent, and the claim fails."  *See LaChapelle*, 2015 WL 5461542, at *8 (citing *Applied Equip.*

15    *Corp.*, 7 Cal. 4th at 511).

16    Finally, "[d]amages are an essential element of a cause of action for conspiracy."  *Filip*,

17    129 Cal. App. 4th at 837 (quotation marks and citation omitted).  Reviewing the initial complaint,

18    the Court noted that Plaintiffs alleged damages in an amount "not less than $10,000,000" but

19    "have not alleged that nComputing fraudulently transferred 10 million dollars."  *LaChapell*e, 2015

20    WL 5461542, at *8.  Thus, the Court concluded that Plaintiffs had failed to connect the damages

21    sought to any alleged conspiracy.  *Id.*  Plaintiffs have not cured this defect in the FAC.  To the

22    contrary, the FAC's recitation of the claim is identical to the initial complaint, again seeking "not

23    less than" $10 million in damages.  (*Compare* Dkt. No. 1 ¶ 18, *with* Dkt. No. 40 ¶ 20.)  While

24    elsewhere in the FAC Plaintiffs allege that nComputing, "through the two part transfer process . . .

25    transferred essentially all of its assets to ZeroDesktop, having a value of millions of dollars" (Dkt.

26    No. 40 ¶ 11), Plaintiffs still have not alleged that nComputing transferred $10 million to

27    ZeroDesktop.

28

United States District Court
Northern District of California

14

**III.    Leave to Amend**

Generally, when a complaint is dismissed, "leave to amend shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); *see* Fed. R. Civ. P. 15(a). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). However, leave to amend may be denied "where the amendment would be futile." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009). Further amendment may be denied as futile where a plaintiff has already amended the complaint once. *See Semiconductor Energy Lab Co., Ltd. v. Yujurio Nagata*, No. C 11-02793 CRB, 2012 WL 177557, at *8 n.6 (N.D. Cal. Jan. 23, 2012) (citing *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

While Plaintiffs have already amended their complaint once following a written order, at oral argument Plaintiffs represented that they could allege facts to support the conclusions made in the FAC. Accordingly, the Court will dismiss with leave to amend, provided Plaintiffs can do so consistent with Federal Rules of Civil Procedure 11.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendants' motion to dismiss. Plaintiffs' Second Amended Complaint, if any, shall be filed by December 17, 2015. Failure to file a Second Amended Complaint will result in dismissal of Plaintiffs' lawsuit with prejudice.

This Order disposes of Docket No. 43.

**IT IS SO ORDERED.**

Dated: December 1, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge